IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCIT OF ALABAMA
WESTERN DIVISION

TAMMY EWING, *et al.*,           )
                                 )
    Plaintiffs,              )
                                 )
vs.                              )           7:17-cv-00743-LSC
                                 )
SARAH MOORE, *et al.*,           )
                                 )
    Defendants.              )
                                 )

MEMORANDUM OF OPINION

Plaintiffs, Tammy Ewing ("Ewing"), Denise Crawford ("Crawford"), and

Martie Patton ("Patton"), brought suit pursuant to Title VII and § 1983 against

Defendants for discrimination surrounding their terminations.  Before the Court is

Defendants', Sarah Moore and Lloyd Moore (collectively "the Moore

defendants"), Alabama Credit Union Administration ("ACUA"), and ACUA

Board Members, Steve Nix, Joey Hand, Linda Cencula, Charles Faulkner, Greg

McClellan, and Greta Webb-Williams (collectively the "ACUA Board

Members")[1] (collectively the "Defendants") motion to dismiss Plaintiffs' second

amended complaint (doc. 37) and Defendants' renewed motion to dismiss for want

---

[1]    All defendants shall be collectively referred to as "Defendants." The six named members
of the ACUA Board shall be referred to as the "ACUA Board Members."

of prosecution (doc. 58).[2] Plaintiffs have filed no opposition to either motion. For the reasons stated below, Defendants' motions (docs. 37 & 58) are due to be granted.

I.    BACKGROUND[3]

Plaintiffs, Ewing, Crawford and Patton, are all females who are former employees of the Alabama One **Credit Union ("Credit Union").** Ewing began her employment with the Credit Union in February 1995, Crawford in April 1990, and Patton in January 1984. On August 27, 2015, by and through vote of the ACUA Board Members**, Defendants "approved, authorized and directed the** Administrator [Defendant Sarah Moore], *ex parte* and without notice, to appoint [the ACUA] as conservator and immediately take possession and control of the **business and assets of the Credit Union."** (Doc. 34 at 5.) That same day, the ACUA sent letters to Plaintiffs notifying them that

> [E]ffective immediately upon the conservatorship of the Credit Union and appointment of the Conservator, the Conservator exercised its authority to terminate any and all employment agreements between you and the Credit Union. Pursuant to Alabama law, any provision in such contract or contracts which provides for damages or

---

[2]    For the purposes of this Opinion, the Court will refer to the second amended complaint simply as "the complaint" or "Plaintiffs' complaint."

[3]    In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (citation omitted).

cancellation fees upon termination shall not be binding on the Conservator or the Credit Union, and neither the Conservator, nor the Credit Union shall be liable to you for damages.

(Doc. 34-1 at 3-4; 34-2 at 5-6; 34-3 at 3-4) (emphasis added) (citing Ala. Code § 5-17-8.) **All letters were signed by Sarah Moore as "Administrator of the ACUA as Conservator of Alabama One Credit Union."** (*See e.g.* doc. 34-1 at 5.) In all of **Plaintiffs' Counts**, they name as defendants the ACUA, which acted as a conservator of the Credit Union for a period of time. They also assert claims against Sarah Moore, who acted as the ACUA Administrator during the conservatorship, and Lloyd Moore, who acted as the Assistant ACUA Administrator during the conservatorship. Allegedly, the firing of Plaintiffs was part of a process by **which Sarah Moore would follow Lloyd Moore's** recommendations for immediate firing. According to Plaintiffs, the process resulted in a pattern and practice of terminating female employees from the Credit **Union's upper management and filling those positions with male employees.** Plaintiffs name the ACUA Board Members as defendants only in Counts IV, V and VI and aver that on August 27, 2015 by and through a vote of the ACUA Board Members, all Defendants approved, authorized and directed Sarah Moore to appoint the ACUA as conservator and immediately take possession and control of the business and assets of the Credit Union. Plaintiffs allege this caused the ACUA

to become **Plaintiffs'** employer when it became the conservator of the Credit Union by way of the Order of Conservatorship.[4]

Both Ewing and Crawford bring individual claims of retaliation under Title VII and § 1983. Ewing bases her retaliation claim upon her expulsion from membership in the Credit Union which occurred after the conservatorship had concluded, while Crawford contends she was terminated on account of an internal complaint she had lodged to the Credit Union regarding sexual harassment which occurred prior to the conservatorship.

**Plaintiffs'** were originally represented by counsel, but are no longer. The Court granted Defendants' motion to disqualify (doc. 39) for the reasons set forth in its Memorandum of Opinion issued April 19, 2018 (doc. 52). The Court has given Plaintiffs ample time in which to secure new counsel, and given them the benefit of a hearing in which the Court explained their need to respond to the motion to dismiss within thirty days of the hearing. At the hearing, the Court provided Plaintiffs with copies of the motion and the brief in support. Plaintiffs have neither secured counsel, nor provided any response to the motion to dismiss (doc. 39). The Court presumes they now proceed *pro se*. Plaintiffs have not

---

[4]     As of February 15, 2017, the Credit Union has now been released from its conservatorship. (*See* Doc. 38-1, Order of Release.)

conducted any discovery in this case nor have they responded to Defendants' requests for admissions[5] or fulfilled their obligations regarding initial disclosures.[6] Additionally, Plaintiffs did not appear for depositions that were timely noticed and served. (*See* Doc. 58-2, non-appearances of Ewing, Patton, and Crawford.) The August 1, 2018 cutoff for discovery has passed.

## II.    STANDARDS OF REVIEW

Pursuant to Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). This Court's inherent power to manage its docket provides authority for the dismissal of a case with prejudice. *Link v. Wabash R. Co.*, 370 U.S. 626, 629-30 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of [their] failure to prosecute cannot seriously be doubted. The power to

---

[5]    Defendants timely served Requests for Admission on Plaintiffs on June 25, 2018. (Doc. 58-1, Requests for Admission). Plaintiffs did not timely respond, and thus, they are deemed admitted. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party of its attorney."

[6]    On August 18, 2017, the Court reminded the parties of their disclosures obligation pursuant to Rule 26(f). (Doc. 16; *See also* Doc. 12 whereupon Magistrate Judge England instructed that, " . . . the parties shall exchange the initial disclosures required under Rule 26(a)(1) at least seven (7) days before the meeting . . . .") The parties conducted their Rule 26 meeting on September 13, 2017, (doc. 28), and agreed to exchange Initial Disclosures "fourteen (14) days after the Court's ruling on Defendants' Motion to Dismiss or on January 3, 2018, whichever comes first." (Doc. 28.) To date, Plaintiffs have not served their Initial Disclosures.

invoke this sanction is necessary to prevent undue delays in the disposition of pending cases and to avoid congestion in the District Courts."); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 360 (1988) ("Courts have historically possessed an inherent power to dismiss suits for discretionary reasons such as failure to prosecute." citing *Link*). The Eleventh Circuit recognized this power in *Eades v. Alabama Dept. of Human Resources*, 298 Fed. Appx. 862, 863 (11th Cir. 2008) ("District courts possess the ability to dismiss a case with prejudice for want of prosecution based on two possible sources of authority: Fed. R. Civ. P. 41(b) or their inherent authority to manage their dockets." (citing *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005))).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must be specific enough that the claim raised is "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible on its face*.") (emphasis added). A claim for relief is plausible on its face when the complaint's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th

Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Conclusory statements of law may "provide the framework of a complaint," but the plaintiff is required to support them with "factual allegations." *Iqbal*, 556 U.S. at 679.

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cty.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

In reviewing the complaint, this Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nonetheless, "[a] well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable." *Twombly*, 550 U.S. at 556. This Court considers only "the face of the complaint and attachments thereto" in order to determine whether plaintiff states a claim for relief. *Starship Enters. of Atlanta, Inc. v. Coweta Cty.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013). Generally, the complaint should include "enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Am. Fed'n of Labor & Cong. of Indus. Orgs v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001)).

Documents which are incorporated as exhibits to the complaint may be considered without converting a Fed. R. Civ. P. 12(b) motion to dismiss into a Fed. R. Civ. P. 56 motion for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)). Because Plaintiffs have included as exhibits their Equal Employment Opportunity

Commission ("EEOC") charges and their Notices of Rights to Sue letters, the Court considers them in this Opinion; where the attached documents conflict with allegations in the complaint, the Court construes the exhibits as controlling. (*See* Doc. 34 Exs. 1-6.) **Additionally, the Court** "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if **the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the docu**ment is not **challenged."** *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Because the Court has concluded that **all exhibits attached to Defendants' motions to dismiss are central to the Plaintiffs'** claims and their authenticity cannot be reasonably challenged, the Court takes them into consideration in this Opinion.

III.    DISCUSSION

In their motion to dismiss (doc. 37) Defendants seek to dismiss with prejudice: (1) the Title VII claims in their entirety: Counts I, II and III; (2) the ACUA and the ACUA Board Members from the Section 1983 claims: Counts IV, V, and VI; and (3) Sarah Moore and Lloyd Moore from the § 1983 retaliation claims: Counts V and VI. **If the Court grants Defendants' m**otion (doc. 37) based upon the merits, the only remaining claim would be the § 1983 claim, Count IV,

against Sarah Moore and Lloyd Moore. However, the remaining Count IV is due to be dismissed based upon Plaintiffs' failure to prosecute their case and their refusal to allow discovery to defendants. As such, all claims are due to be dismissed with prejudice and the case closed.

A.    *The Title VII claims: Counts I, II and III*

Plaintiffs' assert that the legal effect of the conservatorship was that the ACUA became their employer. This is a legal conclusion not entitled to an assumption of truth. At the outset of their complaint, Plaintiffs aver that they are former employees of Alabama One Credit Union. Pursuant to Alabama Code § 5-17-8, the ACUA is an independent Alabama state agency which supervises and regulates state-licensed credit unions. The ACUA's Enabling Act gives it (and those acting on its behalf) the authority to act in the name *of the Credit Union. See* Ala. Code § 5-17-8(I). Sarah Moore, as Administrator, exercised power under the conservatorship to "terminate any and all employment agreements between [Plaintiffs] and the Credit Union." (Docs. 34-1 at 3, 34-2 at 5; 34-3 at 3.)

Title VII of the Civil Rights Act of 1964 makes it unlawful for "an *employer* . . . to discriminate against any [employee] with respect to . . . sex," 42 U.S.C. § 2000e–2(a)(1), and defines "employer" as "a person . . . who has fifteen or more employees," § 2000e(b). The applicable standard surrounding the question of

who, precisely, qualifies as an employer under Title VII is stated in the Eleventh Circuit case of *Peppers v. Cobb County, Georgia* as follows:

> Consistent with the remedial purposes of Title VII, the federal courts **have interpreted the term "employer" liberally.** *Virgo v. Riviera Beach Assocs.*, Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994). Thus, in order to decide whether an entity is a qualified employer, we have asked this **basic question: "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim."** *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc). An examination of this question requires consideration of the totality of the employment relationship. *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669–70 (5th Cir. 1968)). Among the basic factors we consider are these: (1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to **hire, fire, or modify the terms and conditions of the employee's** employment. *Welch*, 57 F.3d at 1011; *Llampallas*, 163 F.3d at 1243.

835 F.3d 1289, 1297 (11th Cir. 2016). **It is alleged that the "ACUA, in addition or in** the alternative, Sarah Moore and/or Lloyd Moore, made the final decisions regarding the terminations of the employment of Plaintiffs and the continued **employment of others at the Credit Union." (Doc. 34 at 9.)** Though Defendants, as the alleged employers of Plaintiffs, provided notice of their terminations, they did so by virtue of the power given them by conservatorship, in the name of the Credit Union and clearly delineated that it was the employment contracts between the Plaintiffs *and the Credit Union* that were being terminated. Additionally, because the notice of termination was given the same day that the Credit Union was

conserved, Defendants would not have had control over Plaintiffs' means and manner of work during their employment with the Credit Union. The facts as alleged do not compel a finding that ACUA became Plaintiffs' employer by virtue of the Order of Conservatorship or that the Moore defendants became Plaintiffs' employers.

i.    *Numerosity requirement under Title VII*

Defendants argue in their motion to dismiss without waiving its argument that the ACUA never employed Plaintiffs, that all three Title VII claims fail because Plaintiffs do not and cannot allege the sufficient number of employees (15) to meet the "employee-numerosity requirement" under the statute. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515-16 (2006) (holding that "Title VII's 15-employee threshold is an element of a plaintiff's claim for relief . . . ."). Plaintiffs' EEOC complaints were dismissed because "the respondent[s] employ[ed] less than the required number of employees or is not otherwise covered by the statutes." (Docs. 34-4, 34-5, 34-6.)

Plaintiffs assert a number of theories in order to satisfy the numerosity requirement as against the Defendants—none of which the Court finds convincing. Plaintiffs allege that the ACUA employed more than fifteen employees either: (1) alone; (2) together with the Credit Union because all Credit Union employees

became employees of the ACUA when the Credit Union was conserved, or the ACUA was an alter ego of the Credit Union; or (3) as a joint employer with the National Credit Union Administration ("NCUA") and/or accounting firms.

Pursuant to Alabama Code § 5-17-48,[7] the ACUA is required to submit an Annual Report of the Agency. As an attachment to their brief in support of their motion to dismiss (doc. 37), Defendants provided excerpts of State Personnel Annual Reports from 2014, 2015 and 2016.[8] All three reports evidence that at no time during 2014-16 did the ACUA employ more than 15 people.[9] This deficiency is also evidenced by Plaintiffs' EEOC dismissal and notice of rights letters. As

---

[7] This code section provides: "The administrator shall make from the reports of the department during the year an annual report to the Governor on the activities of the Alabama Credit Union Administration and such other information as the Governor may request and shall keep on file as a public record in the administrator's office a copy thereof." Ala. Code § 5-17-48 (1975).

[8] The Court is entitled to take judicial notice of facts within these documents pursuant to Federal Rule of Evidence 201 as they are "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined by resort to sources whose accuracy cannot reasonably be questioned."). Public records of the state such as annual reports are documents that courts have determined fall within the ambit of the judicial notice doctrine. *E.g.*, *Mobil Oil Corp. v. Tennessee Val. Auth.*, 387 F. Supp. 498, 516, n.41 (N.D. Ala. 1974) (district court took judicial notice of TVA annual reports); *Johnson v. Hall*, 10 So. 3d 1031, 1034–35 (Ala. Civ. App. 2008) (judicial notice of records of Secretary of State regarding the mailing address of corporation); *Broadway v. Ala. Dry Dock & Shipbuilding* Co., 20 So. 2d 41, 51 (Ala. 1944) (opinion on rehearing) (judicial notice taken of annual report of the Department of Industrial Relations).

[9] The 2014 report lists the Credit Union Administration as having 9 employees and the 2015 report lists it as having 10. (*See* Doc. 38-2 at 3, 5.) The 2016 report states "ACUA employs eleven [11] people." (Doc. 38-2 at 7.)

such, it cannot be said that the ACUA met the requisite number of employees to maintain an action under Title VII on its own.

Next, Plaintiffs contend that the ACUA meets the requisite number of employees by way of aggregation with the employees of the Credit Union, who they **allege were under the ACUA's control**. Pursuant to the applicable Alabama Code sections, as Conservator, the ACUA operated the Credit Union *in the name of the Credit Union*. Ala. Code § 5-17-8(I);[10] *see* Ala. Code § 5-17-40.[11] Plaintiffs admit and affirmatively plead that the ACUA derives its authority from Alabama Code § 5-17-8(I). **Thus, Plaintiffs' argument that the conservatorship transformed Credit Union employees into ACUA employees for the purpose of satisfying the employee-numerosity requirement fails.**

Plaintiffs allege a number of reasons by which they believe the NCUA could either be their employer or a joint employer along with the ACUA. However, Plaintiffs have not alleged that the NCUA issued any order of conservatorship

---

[10]  "for so long as the Credit Union remain[ed] in conservatorship, the Conservator [had] all powers of the members, the directors, the officers, and the committees of the credit union and be authorized to operate the Credit Union in its own name or to conserve its assets in the manner **and extent authorized by the administration.**"

[11]  "(a) There shall be an Alabama Credit Union Administration which shall administer the laws of this state which regulate or otherwise relate to credit unions in the state. The authority of the Alabama Credit Union Administration to perform such functions shall be exclusive and all authority regarding credit unions which was previously vested in the State Banking Department is hereby vested in the Alabama Credit Union Administration."

which is the vehicle by which Plaintiffs allege the ACUA became their employer. Plaintiffs have not provided, and Court has not found any case-law supporting the aggregation of state agencies with federal ones under joint employer theory.[12] The Court remains unconvinced that ACUA and NCUA should be aggregated for purposes of meeting the Title VII numerosity requirement. **Plaintiffs' allegations that "extra examiners" or employees from distinct accounting firms** should be considered for an aggregation to meet the numerosity requirement fare no better.

The Title VII claims asserted against the Moore defendants fail for the additional reason that "individual capacity suits under Title VII are [] inappropriate." Employers, not individuals, are subject to liability under Title VII. *See Busby v. City of Orlando*, 931 F.3d 764, 772 (11th Cir. 1991) (per curiam) ("The relief granted under Title VII is against the *employer* not individuals whose actions might have violated the Act."). The Eleventh Circuit has explained that it "[thinks] the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the

---

[12]     The Eleventh Circuit has made clear that "strong comity and federalism concerns . . . require . . . substantial deference to a state  lawmaking body's determination of whether two or more governmental entities are separate and distinct. *Lyes*, 166 F.3d at 1334-45 (citing *McMillian v. Johnson,* 88 F.3d 1573, 1581 (1tth Cir. 1996) ("[W]e heed the Supreme Court's admonition that federal courts respect the way a state chooses to structure its government.")).

employer or by naming the employer directly." *Id.* Though it is alleged that the Moore defendants became Plaintiffs' employers, they cannot, on their own, meet the numerosity requirement under Title VII. As such, Sarah Moore and Lloyd Moore are due to be dismissed from the Title VII claims.

In the alternative, Plaintiffs allege that Sarah Moore and Lloyd Moore and/or the ACUA are the alter ego of the Credit Union "for purposes of employment there." (Doc. 34, ¶23.) However, Plaintiffs fail to plead or provide sufficient legal or factual support for a claim of alter ego.[13] These are "legal conclusions masquerading as facts [that] will not prevent dismissal." *Oxford Asset Mgmt, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Plaintiffs take issue with the fact that they were not provided a reason for their termination. However, it is "well settled in Alabama that an employment

---

[13]    In Alabama, to establish one party is the alter-ego of another party, or to pierce the corporate veil, a plaintiff must show the following:

(1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will or existence of its own;

(2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuses of control will be presumed; and

(3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*First Health v. Blanton*, 585 So.2d 1331, 1334-35 (Ala. 1991) (citations omitted).

contract at will may be terminated by either with or without cause or justification."
*Hoffman-La Roche, Inc. v. Campbell,* 512 So. 2d 725, 728 (Ala. 1987) (citation
omitted). Meaning, for "a *good* reason, a *wrong* reason, or *no* reason" at all. *Id.* For
the reasons stated above, Plaintiffs' Title VII claims are due to be dismissed.

B.    *Counts II and V—Retaliation claims by Ewing*

To state a claim for retaliation, the plaintiff must allege (1) statutorily
protected activity, (2) a materially adverse action, and (3) a causal connection
between the protected activity and the materially adverse action. *Kidd v. Mando
Am. Corp.,* 731 F.3d 1196, 1211 (11th Cir. 2013). An employment action is
"adverse" only if it results in some tangible, negative effect on the plaintiff's
employment. *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1261 (11th Cir. 2001); *see
Shotz v. City of Plantation,* 344 F.3d 1161, 1181–83 (11th Cir. 2003) (requiring a
"material" adverse action). Ewing claims Defendants retaliated against her for
filing her EEOC charge by causing her to be personally removed from Credit Union
membership after her termination. This allegation does not suffice for a showing of
the requisite adverse action, despite the high significance Ewing may personally
attribute to it. *See e.g. Swindle v. Jefferson County Com'n,* No. 13–14050, 2014 WL
6678411 at *7–6 (11th Cir. Nov. 26, 2014) (no adverse action found when plaintiff

was denied medical care and paid leave after suffering a "panic attack" as a result of reprimand). Count II is due to be dismissed for this additional reason.

Section 1983 was enacted to enforce the Fourteenth Amendment and prohibits interference with federal rights under color of law. Though Ewing alleges she was deprived of membership in the Credit Union, claims actionable under § 1983 require deprivation of rights guaranteed by other laws of the United States and the Constitution. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) (§ 1983 "does not protect anyone against anything"). Count V must fail as a matter of law because Ewing has not alleged any deprivation of a constitutional or other right by any of the Defendants. The right to be a member of a Credit Union, which can be obtained without any cost, is not guaranteed by any law and no showing has been made that a reasonable person would believe that a denial of such membership would be violative of the Constitution or some other law. Therefore, the loss of that membership is incapable of forming the basis for a claim under § 1983[14] and Count V must be dismissed.

---

[14] *See e.g. Abreu-Velez v. Bd. of Regents of the Univ. Sys. of Georgia*, 2015 WL 1534535 *2 (N.D. Ga. Apr. 6, 2015), *aff'd sub nom; Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga.*, 631 F. App'x 888 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1838 (2016) (dismissing Complaint where alleged interference in obtaining a Green Card application after plaintiff's termination was not adverse action sufficient for a § 1983 retaliation claim).

## C.    Counts III and VI—Retaliation Claims by Crawford

Both Counts III and VI relate to **Crawford's** assertion that she was terminated in retaliation for bringing a sexual harassment complaint against a former Credit Union employee, Darin Davidson, *to the Credit Union* while she was employed at the Credit Union *prior* to the conservatorship. Both the harassment and the resulting termination of the harasser by the Credit Union pre-date the conservatorship. (Doc. 34 at 22.) Crawford has failed to allege facts supporting the requisite causal connection for a retaliation claim under either Title VII or § 1983. Plaintiffs allege that the Moore defendants expressed "particular interest" in Davidson's termination by "inquiring about why he was fired" (doc. 34 at 23-24) and that "Davidson, a sexual harasser, was a subservient confidant of Defendants Sarah Moore and the ACUA, who/which wanted to help and protect Davidson to the detriment of Crawford's employment." She asserts that her internal complaint was one "but for" cause of Defendants termination of her employment. However, Crawford never allege that Sarah Moore possessed specific knowledge of Crawford's report of the sexual harassment. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1339 (11th Cir. 1999) ("decision-maker [must have] [become] aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse employment action."); *See Brungart v. BellSouth*

*Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him."). Because the complaint does not contain facts needed to support the requisite causal connection by alleging any Defendant possessed specific knowledge of her sexual harassment claim or that their knowledge of the protected conduct and the adverse action were in close proximity, neither **Crawford's** Title VII nor her § 1983 claim can survive.

D.     *§ 1983 claims against ACUA and ACUA Board Members: Counts IV, V, and VI*

It is unclear whether Plaintiffs named the ACUA in the § 1983 Counts IV-VI. Plaintiffs allege the ACUA deprived them of equal protection and discriminated against them in violation of § 1983, but judgment under these Counts is only sought as against "all individual Defendants." (Doc. 34, ¶¶118, 122, 126.) Out of an abundance of caution, the Court also addresses the § 1983 claims as they would pertain to the ACUA.

i.     *Immunity*

a.  *Absolute Immunity as it pertains to the ACUA*

A non-consenting state is immune from lawsuits brought in federal court by the state's own citizens under the provisions of the Eleventh Amendment to the United States Constitution. *Hans v. Louisiana*, 134 U.S. 1 (1890). It is possible for

States to waive their Eleventh Amendment immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). However, Alabama has not done so. *See id.; see also* ALA. CONST. OF 1901, art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). While the State of Alabama is not named as a defendant in this action, immunity under the Eleventh Amendment stretches to its agencies and certain individuals acting on behalf of the state.

ACUA is a state agency formed under Alabama laws. *See* Ala. Code § 5-17-40 ("There shall be an Alabama Credit Union Administration which shall administer the laws of this state which regulate or otherwise relate to credit unions in the state."). As a state agency, ACUA is absolutely immune from suits brought under § 1983 as well as state-law actions. *Ex parte Hale Cty. Bd. of Educ.*, 14 So. 3d 844, 848 (Ala. 2009) ("Under ALA. CONST. OF 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state." (quoting *Ex parte Tuscaloosa Cty.*, 796 So. 2d 1100, 1103 (Ala. 2000))); *see also Harden v. Adams*, 760 F.2d 1158 (11th Cir. 1985) (Eleventh Amendment bars suits for damages against agencies of the state). As such, any claims made against the ACUA in Counts IV, V and VI are due to be dismissed.

> *b.  ACUA Board Members are covered by statutory immunity*

The section 1983 claims against the ACUA Board Members fail because statutory immunity is provided to the ACUA Board via the ACUA's Enabling Act, which provides:

> Neither the administrator, any member of the Credit Union Board nor any special agent or employee of the Alabama Credit Union Administration shall be personally liable for any acts done in good faith while in the performance of his or her duties as provided by law.

ALA. CODE § 5-17-51. Plaintiffs fail to allege facts that the ACUA Board Members acted in bad faith or in any manner outside their duties under the Enabling Act, or that they are guilty of willful or wanton misconduct. Plaintiffs assert that the Board's adoption and ratification gives rise to liability for the unlawful actions and decisions of the Moore defendants. However, as appointed government officials who serve as volunteers,[15] the ACUA Board Members are entitled to immunity from the claims against them. The impetus for providing exemptions from liability in the Volunteer Service Act is explained therein and states in pertinent part:

> willingness of volunteers to offer their services has been increasingly deterred by a perception that they put personal assets at risk in the event of tort actions seeking damages arising from their activities as volunteers . . . .

---

[15] *See* Ala. Code § 5-17-58 ("No person appointed as member of said Credit Union Board shall receive any compensation for his services except, that each appointed member of said Credit Union Board shall receive $25.00 per day for each day said Credit Union Board is in session, but in no event to exceed $100.00 for each member of said board during any one month, plus travel expenses payable pursuant to Article 2 of Chapter 7 of Title 36.").

Ala. Code § 6-5-336(a)(1). Specifically, the Volunteer Services Act provides that

> Any volunteer shall be immune from civil liability in any action on the basis of any act or omission of a volunteer resulting in damage or injury if:
> (1) The volunteer was acting in good faith and within the scope of such volunteer's official functions and duties for a nonprofit organization, a nonprofit corporation, hospital, or a governmental entity; and
> (2) The damage or injury was not caused by willful or wanton misconduct by such volunteer.

ALA. CODE § 6-5-336(d). Accordingly, all claims asserted against the ACUA Board Members in Counts IV, V, and VI are due to be dismissed.

Plaintiffs never specify whether they are suing the Moore defendants in their official capacities. However, the Court would like to note that they would both be entitled to immunity for any official capacity claims against them.[16]

---

[16] In addition to state agencies, the Eleventh Amendment grants state officials sued in their official capacities immunity from suits brought by private citizens when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)). To determine whether Eleventh Amendment Immunity applies to certain state officials, a court must apply the laws of the state. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). After thorough research, the Court has been unable to locate any state decision that determines whether the Administrator or Assistant Administrator of the ACUA is entitled to absolute immunity when sued in her official capacity. Nonetheless, based on Alabama law and interpretation of state-court precedent analyzing absolute immunity for analogous state-official positions, it is clear the Moore defendants are both entitled to absolute immunity as Administrator and Assistant Administrator of the ACUA. In order to determine whether Plaintiffs' suit is one against the State, which would entitle the Moore defendants to absolute immunity, the Court must consider: whether a result favorable to the Plaintiffs would directly affect a contract or property right of the State, whether the Defendants are simply a "conduit"

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (doc. 37) is due to be granted. **On account of Plaintiffs' failure to** prosecute or otherwise maintain their case, and as a sanction for their refusal to allow discovery to Defendants, **Defendants' motion to dismiss for want of prosecution (doc. 58) is** also due to be granted. Any remaining **claims not disposed of via Defendants' motion (doc. 37)** are due to be dismissed with prejudice for want of prosecution. Accordingly, all claims asserted by all Plaintiffs against any Defendant are dismissed with prejudice and the Clerk is directed to close this case. A separate order will be entered.

DONE and ORDERED on August 13, 2018.

_____
L. Scott Coogler
United States District Judge

190685

---

through which Plaintiffs seeks recovery of damages from the State, and whether judgment against the officer would directly affect the financial status of the State treasury. *Ex parte Moulton*, 116 So. 3d 1119, 1131 (Ala. 2013) (internal citations and quotations omitted). Additionally, "[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought." *Id.* (quoting *Ex parte Carter*, 395 So.2d 65, 67–68 (Ala. 1980)). Here, any suit against the Moore defendants acting in their official capacity as Administrator of ACUA is likewise a suit against the State. Ultimately, Plaintiffs appear to challenge the Moore defendants' official actions as Administrators of the ACUA in conserving Alabama One Credit Union and exercising the rights they have as Administrators to make employment determinations including termination. Thus, the nature of recovery against them in their official capacity would ultimately be recovery against the ACUA and Alabama. Consequently, the Moore defendants are entitled to absolute immunity for any claims against them in their official capacities.